## MARY C. CRIST v. A. A. COSBY *et al.*

### (Filed July 17, 1902.)

1. **UNITED STATES HOMESTEAD—Descends to Whom.** In case of the death of an entryman, the homestead held under the laws of the United States descends to the widow, if there be one, and not to the heirs generally.

2. **INJUNCTION—Does Not Lie, When.** If property is wrongfully levied upon, the party interested must proceed in the court from which the execution issued to have the levy discharged, and can not obtain the desired relief by injunction in a separate action.

3. **SAME.** Where an action was brought in Cleveland county, and a summons was wrongfully issued to, and served upon, one of the defendants in Canadian county, the defendant served in Canadian county cannot, after allowing the case to go by default, have the sheriff enjoined from selling property levied upon under an execution issued upon such judgment.

4. **MOTION—Adequate Remedy, When.** A party claiming an interest in property levied upon under an execution has an adequate remedy at law, by way of motion, to have the property released from the levy.

5. **JUDGMENT—Cannot be Attacked by Injunction, When.** When the judgment of a court of record contains a finding that due personal service was made upon the defendant, such judgment will be upheld, and the same cannot be attacked in an injunction proceeding.

6. **REMEDY.** Section 4464 of the Statutes of 1893 provides an ample remedy for all matters complained of in this case.

7. **PARTY FAILING TO PRESENT DEFENSE—Equity Will Not Interfere.** Equitable relief cannot be given where parties have negligently, or without cause, failed to present their defense to the court in which the action was brought.

(Syllabus by the court.)

*Error from the District Court of Canadian County; before Clinton F. Irwin, Trial Judge.*

*Forrest, Lowe & Sheller,* for plaintiff in error.

*W. L. Baxter* and *Colteral & Hornor,* for defendants in error.

Opinion of the court by

PANCOAST, J.: On the 29th day of June, 1900, the plaintiff in error, plaintiff below, commenced her action in the district court of Canadian county, and obtained a temporary order of injunction from the probate court of that county, the petition in the case, omitting the caption, being as follows:

"1.   That she is, and for more than four years last has been, an actual resident of the county of Canadian. That she settled with her husband, one M. Thomas, in the Cheyenne and Arapahoe Indian reservation, on the opening of said reservation for settlement in 1892, and for more than five years thereafter resided upon said land with her husband; that said M. Thomas, who made valuable improvements thereon and cultivated the same, and the same, during all of said time, was the homestead of said M. Thomas, and this plaintiff, his wife. The said land was described as follows, to-wit: The S. E. quarter of section 7, township 11, range 7, west I. M., in Canadian county, O. T. and is the same land referred to in the levy of a certain execution now in the hands of the defendant Cosby, hereinafter more specifically referred to.

"2.   Plaintiff further alleges that on or about the 20th day of April, 1898, the said ———Thomas departed this life, leaving this plaintiff and Jacob Thomas, Roy Thomas and Stella Thomas, his minor children residents upon said land. That thereafter, to-wit, on or about the 7th day of June, 1900, plaintiff united in marriage with W. H. Crist, who is now her husband, and the plaintiff says that she is the same person described in the said execution in the hands of the defendant Cosby referred to.

"3. The plaintiff further alleges that on or about the first day of May, 1898, she was induced to sign a certain paper, which she was led to believe and did believe, was an application for life insurance, but which afterwards proved to be a promissory note for the sum of eighty eight dollars and eighty cents ($88.80) ; that the note was payable to the order of one R. M. Cohen, according to her best recollection and belief, the said Cohen being then and there solicitor for a life insurance company, and the said notes were given by plaintiff in consideration of certain life insurance then and there contracted for through the said Cohen, but which this plaintiff never received or accepted, and which was never issued to her. That the said Cohen soon thereafter departed from the county of Canadian, and that plaintiff has never had any knowledge of his whereabouts since his departure.

"4. Plaintiff further alleges that the said Andrew Kingkade, mentioned in exhibit 'A' hereto attached, was also a life insurance agent and co-partner with the said Cohen in the said transaction, but plaintiff avers that he was not a payee nor party to said promissory note; that said Kingkade is a resident, or was thereafter a resident, in the county of Cleveland, residing in the city of Norman, in said county.

5. Plaintiff further alleges that thereafter plaintiff received a summons from the probate judge in the county of Cleveland, purporting to summon the plaitniff to appear in an action before said probate judge against this plaintiff for the recovery of the amount in said note, that the said summons required the appearance of the plaintiff before said judge to answer on the 24th day of August, 1899, that the same was not served on plaintiff until the 28th day of August, 1899, and such was the only service of her in said case, and the said Andrew Kingkade and the said Cohen, were made co-defendants in the said action against the plaintiff; and the plaintiff avers, from information and belief, that the making of the said Andrew Kingkade defendant in the said proceedings in the said action before the said probate judge was for the single and only purpose of making excuse and pretense to issue a

summons to the county of Canadian by the said probate judge in the said proceedings. That said Kingkade was not a party to said note, but plaintiff says that he was the agent of the said ——————————— insurance company. And plaintiff says that the summons issued by the said probate judge was directed to the sheriff of Canadian county, wherein this plaintiff was found, and was served therein at the time and in the manner as heretofore stated. That no service was had upon the said Kingkade, nor upon either of the said co-defendants in the county of Cleveland, nor elsewhere. That the said probate judge, notwithstanding there was no summons served upon the said Kingkade in the county of Cleveland, nor upon the said Cohen in the said county, proceeded to render judgment in said cause against this plaintiff, and plaintiff hereto attaches a copy of the judgment so then and there entered, and a transcript thereof is filed with the district clerk in and for the county of Canadian, being the same transcript upon which the execution hereinafter referred to was issued, and marks the same exhibit 'A,' and makes the same a part of this petition.

"6.   Plaintiff further alleges that the said defendant, A. A. Cosby, is the sheriff of Canadian county, Oklahoma, and that such sheriff received the execution issued upon said transcript, and by virtue of said execution has made a levy upon certain property, and has advertised the same, and is about to sell said property, and unless restrained will sell the same. Said property is described as follows, to-wit:   One dwelling house and barn and all other buildings located on the S.E. 1-4 of section (7) seven, township (11) eleven, range (7) seven, west I. M., in Canadian county, O. T.   Also the undivided one-third interest in all growing crops located upon the above described land, which were levied upon to satisfy said judgment.

"7.   Plaintiff further says that the levy upon said property is made upon the assumption that said property belongs to this plaintiff, when in truth and fact plaintiff is not the owner of said property, nor any part thereof in her own right;

that whatever interest she has therein is in the nature of a fiduciary interest. That the improvements referred to upon said land are permanent and lasting improvements, and are a part of said real estate, and, as such, are not subject to levy as the property of this plaintiff. That the title to the land upon which said improvements are located, is still in the government of the United States, though the heirs of the said Thomas, deceased, have a right to acquire title thereto under the laws of the United States, by making the requisite proofs of said settlement and improvements by said Thomas. That the said one-third interest to the said crop of wheat referred to in said levy, is the property belonging to the said heirs of the said Thomas, deceased, and is not the personal property of this plaintiff, but her only interest in and to said wheat is as the administratrix of the said Thomas, and that her interests, if any such be had, is joint with the heirs of the said Thomas, deceased, and not a several and distinct interest.

"8. Plaintiff alleges that the said judgment in the said probate court of the said Cleveland county is of no force and effect, against this plaintiff, for the reason that said probate judge had no jurisdiction over the person of this plaintiff, according to law.

"Wherefore plaintiff prays that a temporary injunction, restraining the said Cosby from selling the said property, pending this action; that on the final hearing the court will decree that such judgment is null and void, and that plaintiff be granted such other and further relief as in equity may be deemed right and just."

To this petition a general demurrer was filed and sustained. The plaintiff electing to stand upon the petition, the case is brought here for review.

It is contended by the plaintiff in error, first, that the improvements levied upon by the sheriff were permanent and a part of the realty, and were necessary to the making of final proof on the land; that the same did not belong to the plaintiff

in error, but belonged to the heirs of M. Thomas, the heirs being the plaintiff, the widow, and three minor children. Second, that the judgment was void, for the reason that Cohen and Kingkade, who were co-defendants of the plaintiff in error in the action in Cleveland county, had no interest in the subject-matter of the action, and were fraudulently made parties for the purpose of obtaining service upon the plaintiff. Third, that the probate court of Cleveland county never had jurisdiction of the plaintiff, for the reason that judgment was rendered on the 24th day of August, 1899, and the summons was not served upon her until the 28th day of August, four days after the rendition of the judgment. Fourth, that the judgment in Cleveland county had been fraudulently obtained, and that no consideration had been given for the notes sued on.

The first contention of the plaintiff in error is not well founded, and the petition is not good upon that ground, for two reasons. First, that the homestead, upon the death of the entryman, descended to the widow, and not to the heirs, as is plainly seen by reference to section 2291 of the homestead laws. The heirs only take in cases where there is no widow, but if this were not true the petition could not be sustained on this ground, for the reason that the plaintiff has an adequate remedy at law by way of motion to release the property from levy. This remedy is brief and effective. (*White Crow v. White Wing*, 3 Kan. 276; *Harrison & Willis v. Andrews*, 18 Kan. 535; *Green v. McMurtry*, 20 Kan. 189; *Capital Bank v. Huntoon*, [Kan.] 11 Pac. 369.)

It was held in the case of *White Crow v. White Wing*, *supra*, in Kansas at a very early day that any person interested in the defeat of a sale might, although he was not a party to the suit, move the court to set aside such sale. This case has

been followed in numerous cases, and in *Green v. McMurtry,* *supra,* the court said:

"The fact that the defendant was not legally served with summons, and the fact that he was not legally and technically a party to the action, would not deprive him of the privilege of making such a motion. Any person interested in a suit may make a motion with reference to his interest, whether he is technically a party thereto or not."

The general rule that an injunction will not be issued where there is a plain and adequate remedy at law, is applicable here. There is certainly no reason for multiplying suits when a full and complete remedy exists, and by the most direct and informal method that could exist.

In the case of *Pullman v. Hulse,* 5 Pac. 176, it was held that:

"Before a summons can be rightfully issued from one county to another, the person served with the summons in the county in which the action is brought must have a real and substantial interest in the subject of the action adverse to the plaintiff, and against whom some substantial result may be obtained; and the action must be rightfully brought in the county in which it is brought, and as against the person served with the summons in such county."

This rule was laid down in *Dunn v. Hazlett,* 4 Ohio St. 435, and *Allen v. Miller,* 11 Ohio St. 374, and is followed and upheld by the supreme court of Kansas in *Pullman v. Hulse,* *supra,* and *Wells v. Patton,* 33 Pac. 15. But while it is held that a summons issued to a foreign county, where the party served in the county where the action is brought has no substantial interest in the subject of the action, is founded upon a wrongful act, and cannot be supported, yet in order that the defendant in the action may take advantage of the wrongfull act, he must present that question at as early a stage as is

possible in the case in which the summons was wrongfully issued.  He cannot allow judgment to be taken against him by default, without attempting to preserve his rights, and after judgment is rendered commence a separate action, and obtain the relief that he would have been entitled to if he had gone directly to the court that rendered judgment, and tested the jurisdiction of the court in that case.  No good reason can be presented why a defendant who has been improperly and fraudulently made a party to a suit should not present to the court in which the action is brought all the defenses which can be presented. Indeed, it has been held that defenses of this character, if not taken advantage of in the action in which they exist, until after the parties have answered to the merits, will be waived, and the defendant will not afterwards be heard to say that the trial court had no jurisdiction.  Such questions may be waived if not settled before proceeding to try the other issues in the case, or by allowing the case to go by default, and making no defense whatever.  The plaintiff in error should have proceeded diligently in the case in which the judgment was rendered, and, having failed to do so, cannot obtain relief by injunction in a separate suit.

If it be true, as contended, that judgment was rendered four days prior to the service of the summons, such defect cannot be taken advantage of here.  The judgment in this case, as shown by the exhibit attached to the petition, contains a finding of the court that due personal service was made upon the defendant.  This is sufficient to uphold the judgment, and the same cannot be attacked in an injunction proceeding. (*Dexter v. Cochran*, 17 Kan. 447.)   Such finding and adjudication are *prima facie* evidence of due and legal service of summons, and the presumption thus raised cannot be overthrown by an allegation of the fact that the summons was not

not served until four days after the judgment was rendered. There is nothing said in the petition as to what the return of the sheriff on the summons was. The court must have looked to the summons and based the finding that due service was had upon the return. And even the return of the sheriff is conclusive and cannot be questioned by an injunction action. (*Goodard v. Harbour*, 44 Pac. 1055.) If the return of a sheriff cannot be attacked in an injunction proceeding, *a fortiori* will the rule apply to the judgment of a court, where it affirmatively appears from the journal entry of the judgment that due service was had? No one can contradict that which the record actually avers, and were not this the rule the greatest confusion would prevail. There would be but little, if any, solemnity to the judgment of a court, and a great multiplicity of suits would be the rule. (*Dresser v. Woods*, 15 Kan. 344; *Ornn v. National Bank*, 16 Kan. 341; *O'Driscoll v. Soper*, 19 Kan. 574.)

It may be argued that the defendant could not have defended against this suit, because service was not made until after the judgment was rendered. Conceding this contention to be true, which must be conceded under the demurrer, yet we have a specific statutory provision covering just such cases. Section 4464 of the Statutes of 1893 specifically provides how and in what cases courts may vacate or modify their own judgments or orders, at or after the term at which the judgment is rendered or the order made. The third, fourth and seventh provisions of that section are ample to cover all the questions of this case. If a summons is, in fact, fraudulently issued, and there is no opportunity to defend, "the party seeking to vacate or modify a judgment or order, may obtain an order suspending proceedings on the whole or part thereof, * * * * upon it being rendered probable * * * * that the

party is entitled to have such judgment or order vacated or modified." (Section 4469, Statutes of 1893.) This article, making provision for the vacation of judgments, applies to all the courts of record of this territory. (Section 4472, Statutes of 1893.)

What is said here of the third contention applies with equal force to the fourth one. There is a general underlying principle here covering this entire case that seems to have been entirely overlooked by counsel. The general rule that equitable relief cannot be given where parties have negligently or without cause failed to present their defenses, applies here. There is no allegation whatever in the petition that any application has been made for relief to the court that rendered the judgment, and under all circumstances, where there has been no such application, the rule is general that an injunction will be denied.

In the American and English Encyclopedia of Law, second edition, vol. 16, p. 374, it is said:

"The only cases in which equity will relieve against a judgment on grounds which might have been availed of as a defense to the action at law are where the party was prevented from making such defense, not through any lack of diligence on his part, but through fraud, accident, surprise, or some adventitious circumstances beyond his control. This proposition has been so repeatedly affirmed that it has become a principle and maxim of equity, and it is so inflexible that it will not be abrogated even where the judgment is manifestly wrong in law or fact, or will work injustice or hardship."

See also the cases there cited.

The judgment of the court below is affirmed.

Irwin, J., who presided in the court below, not sitting, Hainer, J., and Burwell, J., concur in the result reached; all the other Justices concurring.