## LOVE, *Sheriff*, et al. v. CAVETT.

No. 373.   Opinion Filed May 10. 1910.

(109 Pac. 553.)

1.   **APPEAL AND ERROR—Review—Extent—On Appeal ,from Final Judgment.** Where a petition in error is filed within one year from the rendition of the judgment, the alleged error of overruling a demurrer to the petition will be reviewed by this court.

2.   **CONSTITUTIONAL LAW—Obligation of Contracts.** In replevin, where the property is taken and delivered to plaintiff under the writ, no implied contract arises on the express undertaking in the bond to return the property or the value, should a return thereof be adjudged.

3.   **CONSTITUTIONAL LAW—Obligation of "Contract."** The term "contract" is used in the federal Constitution providing, "No state· shall pass any * * * law impairing the obligation of contracts," in its ordinary sense, as signifying the agreement of two or more minds for considerations proceeding from one to the other to do or not to do ·certain acts. Mutual assent to its terms is of its essence.

4.   **HOMESTEAD—Conveyance by One Spouse.** Prior to the act of March 15, 1905 (Laws 1905, c. 18), plaintiff's grantor, a married woman, was vested with title to certain lots not impressed with the homestead character. Said act impressed them as such, the same being built upon and occupied as the home of herself and family. Thereafter plaintiff in error obtained judgment in a court of record against plaintiff's grantor, which became a lien on her real property not exempt. Subsequently plaintiff's grantor, her husband not joining, made, executed, and delivered to plaintiff a warranty deed to said lots, and placed her in possession. Plaintiff in error, to satisfy said judgment, thereupon levied an execution on said lots, to which the husband of plaintiff's grantor after said levy made, executed, and delivered to plaintiff his separate warranty deed. In an action by plaintiff to clear her title, held that said deed made by plaintiff's grantor was not void and vested in plaintiff the title to said lots subject to be avoided only by the nonjoining spouse; that a failure to avoid said deed by him, after due notice, as provided in Wilson's Rev. & Ann. St. Okla. 1903, sec. 883, concluded his right so to do, and that a demurrer to plaintiff's petition setting forth said facts in an action to enjoin a sale under said execution whereby a lien by virtue of said· judgment was sought to be enforced, and to clear her title, was properly overruled.

5.    **APPEAL AND ERROR—Necessary Parties.** Where, in a suit to clear title, plaintiff's grantors by separate deeds were made parties defendant to serve the nonjoining spouse with notice, as provided by Wilson's Rev. & Ann. St. Okla. 1903, sec. 883, they entered appearance, but failed to plead and no further action was taken against them—held, on motion to dismiss the proceeding in error prosecuted by the two remaining defendants against whom judgment was entered, that plaintiff's said grantors are not necessary parties to this proceeding, and that said motion to dismiss is overruled.

(Syllabus by the Court.)

*Error from District Court, Kingfisher County; A. H. Huston, Judge.*

Action by Anna R. Cavett against J. P. Love, sheriff, and others. Judgment for plaintiff, and defendants bring error. Affirmed.

*J. C. Robberts* and *Dodson & Glasser,* for plaintiffs in error. *F. L. Boynton,* for defendant in error.

Copies of briefs did not reach the reporter.

TURNER, J.   This is a suit to clear title brought by Anna R. Cavett, defendant in error, in the district court of Kingfisher county, against J. P. Love, as sheriff, and J. M. Dodson, plaintiffs in error, and B. M. P. Jordan and wife, Laura S. Jordan. Jordan and wife entered appearance, but failed to plead, and no further action was taken against them. After demurrer filed and overruled and exceptions saved, Love and Dodson answered. There was trial to the court and judgment for plaintiff. Defendants Love and Dodson bring the case here without making said Jordan and wife parties to this proceeding.

The petition substantially states that on September 24, 1902, defendants Benj. M. P. Jordan and his wife, Laura S. Jordan, were owners of a homestead (describing it), situated in Oklahoma Territory, under patent from the United States conveying to him said land; that about October 8, 1903, they sold it; that with a part of the proceeds of said sale he, on or about September 4, 1904, purchased another, consisting of lots 1 and 2, in block 3, in the

town of Kiel, causing title thereto to be vested by warranty deed of that date in his wife, Laura S. Jordan, for the purpose of enabling her to hold the legal title to the same in trust for him, and that the same does not exceed one acre; that since that time said Jordan and wife have resided thereon, claiming the same as a homestead up to and including April 25, 1906; that on said day said Benj. M. P. Jordan sold said lots to plaintiff, and, to pass title, caused said Laura S. to excute and deliver to plaintiff a warranty deed thereto, which said deed on that day was duly recorded and possession of the premises surrendered to plaintiff, who is now owner and in possession thereof; that thereafter, on May 20, 1906, said defendant Benj. M. P. Jordan also executed to plaintiff his warranty deed therefor, copies of which said deeds are filed as exhibits to said petition; that on January 20, 1902, defendant J. M. Dodson recovered judgment against the defendant Benj. M. P. Jordan in the probate court of Kingfisher county for $267 damages and costs, upon which execution issued and was levied upon certain personal property which was on July 7, 1903, replevied from the sheriff by Laura S., and for which she later recovered judgment; that pending trial of said cause anew in the district court of Kingfisher county an order was entered granting leave to substitute J. M. Dodson as defendant therein; that no action was taken under said leave, no amended pleadings filed, and the issues were tried as they then existed to a jury which returned a verdict for defendants, and that they were entitled to possession of the property taken under the writ; that thereupon the court rendered judgment accordingly, and for a return of said property to defendants or its value $450, but, by misprision, the clerk, on December 6, 1905, entered judgment in favor of the defendant J. M. Dodson and against the defendant Laura S., and that said entry so remained until May 22, 1906, when the said clerk added the name of J. P. Love as plaintiff in said judgment entry; that on March 10, 1906, execution issued and was returned, "No property found"; that on May 15, 1906, an alias execution issued directed to the

sheriff of Kingfisher county, J. P. Love, who, to satisfy the same, levied upon said lots and caused the same to be appraised, and advertised for sale, fixing the time and place thereof, as set forth in a copy marked "Exhibit C"; that the judgment upon which said execution issued was never a lien upon said lots; that, when issued, said property belonged to plaintiff; that at all times prior to their acquisition by plaintiff said lots were exempt from sale under said judgment, and never became subject thereto; that the said judgment, while appearing of record to be a lien upon the real estate of Laura S. Jordan, was never such by reason of the facts set forth, and casts a cloud upon plaintiff's title, which "should be removed by an equitable decree," pending which defendants J. P. Love, as sheriff, and J. M. Dodson, should be enjoined from enforcing said execution by selling said property as they are threatening to and will do unless restrained; that "the said Benj. M. P. Jordan and Laura S. Jordan are made parties hereto because and by virtue of their warranty of the title to the said premises to this plaintiff," and prays that said judgment be decreed not to be a lien upon said lots; that the cloud thereof upon the records be removed by proper decree; that said execution be quashed; that the sale of said lots be enjoined; that Dodson be enjoined from further proceeding against them by execution on said judgment, and for general relief.

It is urged by counsel for Dodson that the court erred in overruling his demurrer to said petition. In answer to this it is contended that we cannot review said alleged error, for the reason that it occurred, if at all, more than one year prior to the filing of the petition in error. While this is true, as said petition was filed within one year from the rendition of the judgment, we will review it. *Mechanics', etc., Bank v. Harding,* 65 Kan. 655, 70 Pac. 655. Neither is this alleged error waived, as contended, by filing an answer. In overruling this demurrer, the court, in effect, held, and we think correctly, that prior to the act of March 15, 1905 (Laws 1905, c. 18), pending the replevin suit and before judg-

ment, the title to the lots in controversy being in Laura S. Jordan, the same were not impressed with the homestead character, but that said act amended the act of March 9, 1893, and did so impress them by declaring "the homestead of the family, which shall consist of the home of the family, whether the title to the same shall be lodged in or owned by the husband or wife," and operated to exempt them as the homestead of the Jordan family from the payment of the debt sought to be collected by the levy complained of, and vested title thereto in the purchaser, Anna R. Cavett, free of the judgment lien sought thereby to be enforced against them. This holding is alleged error. In support of the demurrer, it is urged that said amendatory act purporting to exempt as a homestead that which was not so before is invalid as regards contracts made before its passage; that at the time the property taken in replevin was delivered to her under the writ Laura S. impliedly contracted with said Dodson, in effect, to return said property, or its value, should a return thereof be adjudged; that pursuant thereto the court adjudged a return; that she failed to return said property; that the lots levied on were not exempt at the time said contract was made and that said act since exempting them from execution for the payment of the value of the replevined property as assessed by the jury impaired the obligation of said contract, and is void under the federal Constitution, providing that "no state shall pass any * * * law impairing the obligation of contracts."

Assuming, but not deciding, that said inhibition was applicable to Oklahoma Territory, the point is not well taken. Said suit in replevin was one in tort. Before Laura S. as plaintiff therein could secure service of the order of delivery and obtain possession of the property described in the writ, the law required her to execute an undertaking, in effect, among other things, to pay all costs and damages which might be awarded against her and to return the property, if a return thereof be adjudged. There was no implied contract to the same effect growing out of this express under-

taking in favor of Love as sheriff, the only party defendant in that suit at that time, or in favor of any one else. Certainly not in favor of Dodson, the execution creditor, who when said undertaking was executed was not a party to said suit, and might never have been and could not have been made so except as he was afterwards substituted on his own motion for Love, the sheriff. Such an agreement, if one arose, was not one arising by mutual assent of Dodson and Laura S., but was one more in the nature of an obligation imposed by law, and consequently not within the protection of the provision of the federal Constitution, *supra.* Or, as stated by Justice Fields in *State of Louisiana ex rel. v. Mayor, etc., of New Orleans,* 109 U. S. 285, 3 Sup. Ct. 211, 27 L Ed. 936:

"The obligation to make indemnity created by the statute has no more element of contract in it because merged in the judgments than it had previously. The term 'contract' is used in the Constitution in its ordinary sense, as signifying the agreement of two or more minds for considerations proceeding from one to the other to do, or not to do, certain acts. Mutual assent to its terms is of its very essence. * * * The prohibition of the federal Constitution was intended to secure the observance of good faith in the stipulation of parties against any state action. Where a transaction is not based upon any assent of parties, it cannot be said that any faith is pledged with respect to it; and no case arises for the operation of the prohibition. *Garrison v. New York,* 21 Wall. 203, 22 L. Ed. 614."

*Edwards v. Kearzey,* 96 U. S. 595, 24 L. Ed. 793, relied on by counsel for Dodson, is not in point. In that case, sections 1 and 2 of article 10 of the Constitution of North Carolina, which took effect April 24, 1868, declared, among other things, that every homestead and building used therewith, not exceeding in value $1,000 to be selected by the owner, or in lieu thereof any lots in any city, town or village, with all buildings used thereon, owned and occupied by any such resident, not exceeding said value, shall be exempt from sale for the collection of any debt under final process. A later act provided for carrying said sections into effect. Three several money judgments were recovered against de-

fendant in error: One on the 15th of December, 1868, upon a bond dated September 25, 1865; another on October 10, 1868, upon a bond dated February 27, 1866; and another on January 7, 1868, for a debt due prior to that time. Two of these judgments were docketed and became liens on the premises in controversy on December 16, 1868. The third was docketed and became such lien on January 18, 1869. When the debts merged in the judgments were contracted, the exemption laws then existing enumerated certain articles of minor value, which was later extended to 50 acres of land in the country or 2 acres in town, of no greater value than $500. On January 22, 1869, the premises in controversy were duly set off to defendant in error as a homestead, which did not exceed $1,000 in value, and which was all the real estate he owned. On March 6, 1869, the sheriff, under executions issued on said judgments, sold the premises to plaintiff in error and executed him a deed, the regularity of which was not contested. The purchaser, plaintiff in error, brought suit to recover possession of the premises so sold and conveyed. The trial court held that the exemptions created by the Constitution and the act prescribing the mode of laying off the homestead protected the property from liability under the judgments, and that the sale and conveyance by the sheriff was therefore void. The Supreme Court of the state affirmed the judgment. On appeal the Supreme Court of the United States declared the only question presented by the record to be whether the exemption was valid as regards contracts made before the adoption of the Constitution of 1868, and held, in effect, that it was not, in that the exemption created by said Constitution impaired the obligation of said contracts. In passing, the court declared it to be settled doctrine that the laws existing at the time and place of making a contract enter into and form a part of it as if they were expressly referred to or incorporated in its terms, and that the rule embraced alike those which affect its validity, construction, discharge, and enforcement; and reversed and remanded the case, and expressly held that that part of the Constitution of

1868, *supra,* and said act carrying it into effect, seriously impaired the obligation of the several contracts, and for that reason were void as to them. But this case is not in point, in that it only decides, in effect, that the constitutional provision and the act carrying it into effect being respectively adopted and passed since the obligation of the respective bonds attached impaired their obligation, in that they exempted from execution that which was not so at the time those obligations were created, and hence impaired said obligations. Here no similar state of facts exists, in that no contract within the contemplation of the provisions of the Constitution, *supra,* existed between these parties prior to the act of March 15, 1905, and hence no obligation for said act to impair.

It is next contended by Dodson that, conceding said lots were then impressed with the homestead character, the lien of his judgment attached thereto during the interim from April 25, 1906 (the date of the deed from Laura S. to Anna R. Cavett), to May 25, 1906 (the date of the deed from her husband, B. M. P. Jordan, to said Anna R.). Not so, for the reason that the deed from Laura S. to Anna R. was not void, but carried the title to the lots, and vested it in the purchaser, good as against all the world save the husband, B. M. P. Jordan, as to whom said deed was merely voidable, and no interim existed between the passing of the title and possession thereof. At the time said deeds were made, Wilson's Rev. & Ann. St. Okla., § 880, provided:

"No deed, mortgage or other conveyance relating to real estate or any interest therein, other than for a lease for a period not to exceed one year, shall be valid until reduced to writing and subscribed by the grantors; and no deed, mortgage or contract relating to the homestead exempt by law, except a lease for a period not exceeding one year, shall be valid unless in writing and subscribed by both husband and wife, where both are living and not divorced, except to the extent hereinafter provided."

Section 882 provided:

"Where the title to the homestead is in the husband, and the wife voluntarily abandons him for a period of one year, or from any cause takes up her residence out of the territory, he may con-

vey, mortgage, or make any contract relating thereto without being joined therein by her; and where the title to the homestead is in the wife and the husband voluntarily abandons her, or from any cause takes up his residence out of the territory for a period of one year, she may convey, mortgage or make any contract relating thereto without being joined therein by him."

Section 883 provided:

"If the husband shall make any deed, mortgage or contract relating to the homestead without being joined therein by his wife he shall be concluded thereby, and the same can only be avoided by the wife; and if the wife shall make any deed, mortgage or contract relating to the homestead without being joined therein by the husband, she shall be concluded thereby and the same can only be avoided by the husband; and in either case, the husband or wife entitled to avoid any such deed, mortgage or contract shall be concluded by a failure after due notice of any suit in a court of competent jurisdiction, to set forth his or her right, title or interest therein."

Standing alone, said section 880, which provides, "No deed * * * relating to the homestead exempt by law, * * * shall be valid unless in writing and subscribed by both husband and wife, if both are living and not divorced, except to the extent hereinafter provided" (Jordan and wife so living), would render the deed from Laura S. Jordan to Anna R. Cavett void, were it not thereafter further provided in section 883 (section 882, applying only to cases of abandonment), in effect, that, "if the wife shall make any deed * * * to the homestead without being joined therein by the husband, she shall be concluded thereby and the same can only be avoided by the husband. * * * *" Showing the intent thereof to be to permit the wife Laura S. to make a deed to this homestead, pass title thereto, and vest it in said Anna R. good as against all the world except the husband, not joining, and making the deed only voidable as to him. This we take to be the plain meaning of the statute gathered from its face. And, further, it appearing from the petition that since the execution of said deed from Laura S. to Anna R. both said Laura S. and her nonjoining spouse were made parties defendant to this

suit, and the latter being entitled to avoid said deed has failed after due notice of this suit to do so or attempt, we are of opinion that the deed from Laura S. Jordan to Anna R. Cavett made, executed, and delivered by the former to the latter on April 25, 1906, vested title to the lots in controversy in the purchaser, and that the contention of Dodson is without merit.

It follows that, as the judgment upon which the execution issued never became a lien upon the lots, the sale thereof may be properly enjoined in this action—that is, unless, as is next contended, said Anna R. Cavett had a plain, adequate and complete remedy at law. In support of the contention that she had, plaintiff cites Wilson's Rev. & Ann. St. Okla. § 724, which, in effect, permits any person interested in any suit or affected thereby to file a motion in the case, and contends that Anna R. Cavett's remedy was plain, adequate, and complete, and that she should have filed a motion in the court from which the execution issued to release the lots from the levy. In this we cannot concur, for the reason that the remedy thus suggested is simply cumulative, and does not oust a court of equity of its inherent jurisdiction to quiet title and remove therefrom a cloud. That such is this proceeding is beyond doubt, and that a sale of the property in controversy under this execution sued out on a judgment exerting no lien upon this property and permitting it to go to sale thereunder would constitute a cloud on this title is equally beyond doubt.

In *Goodell v. Blumer et al.*, 41 Wis. 436, the sheriff sought to subject certain real estate to sale on execution founded on a judgment which never became a lien on the property. The owner thereof, as grantee from defendant in the judgment, filed his bill to prevent or remove the cloud upon the property. The court in passing said:

"It is stated in the complaint that the defendant Coe, acting as sheriff, has levied upon the real estate described therein by virtue of an execution in favor of his codefendant and against Samuel Stout and C. Stout, and that he is proceeding to sell the property to satisfy the execution. The plaintiff claims that the

judgment upon which the execution issued never became a lien on the property, and he seeks to enjoin the sale because the sheriff's certificate or deed will be a cloud on his title.   There can be no doubt that a court of equity will exert its jurisdiction and grant relief in such a case.  And this it will do by virtue of its inherent powers as a court of equity.     *Pier v. City of Fond du Lac.* 38 Wis. 470; *Hamilton v. City of Fond du Lac,* 25 Wis. 490; *Siegel v. Supervisors of Outagamie Co.,* 26 Wis. 70; *Milwaukee Iron Co. v. Town of Hubbard,* 29 Wis. 51"—

and held the complaint sufficient.

In thus holding, we are not unmindful of the case of *Mary C. Crist v. A. A. Cosby et al.,* 11 Okla. 635, 69 Pac. 885.   That was a proceeding by plaintiff in error, plaintiff below, in the district court.   In her petition she sought to, and did temporarily, enjoin the levy of an execution sued out on a judgment lodged against her in the probate court of Cleveland county, which she claimed was void for certain reasons, among which was that the land sought to be levied on being a homestead did not descend to her as the widow, but to the heirs of the deceased entryman.   The trial court sustained a demurrer to the petition.   The Supreme Court affirmed the judgment upon the ground that the petition disclosed petitioner to have an adequate and complete remedy at law by way of motion to release the property from levy in the court from which the execution issued, and cited in support thereof *White Crow v. White Wing,* 3 Kan. 276, *Harrison and Willis v. Andrews,* 18 Kan. 535, *Green v. McMurtry,* 20 Kan. 189, and *Capital Bank v. Huntoon,* 35 Kan. 577, 11 Pac. 369, and said:

"The general rule that an injunction will not be issued where there is a plain and adequate remedy at law is applicable.   There is certainly no reason for multiplying suits when a full and complete remedy exists, and by the most correct and formal method that could exist."

If the court in that case intended to hold that the remedy given by the section of the statute, *supra,* was more than cumulative, and ousted a court of equity from its inherent jurisdiction to quiet title and remove a cloud therefrom, we will not follow it.

Rather will we follow the doctrine laid down by the court in the *Gale Manufacturing Co. et al. v. Lyman Sleeper et al.*, 70 Kan. 806, 79 Pac. 648. In that case plaintiff in error sued a firm composed of W. T. Breckenridge and Harry Sleeper in a justice's court on account. Pending the action Breckenridge conveyed a tract of land to L. Sleeper, the father of Harry. After judgment recovered, it filed a transcript thereof in the district court, and caused to be levied an execution upon said land, upon the theory that such deed was void as a fraud on creditors. L. Sleeper then sued and enjoined said company from selling the land under said execution. The Gale Company prosecuted error. Plaintiff in error contended that its demurrer to the petition for injunction should have been sustained upon the ground that plaintiff had an adequate remedy at law, in that he could have made a motion pursuant to said section in the case in which the execution issued, to release the land from levy. It cited and relied on the Crist case, *supra,* which the court said contained expressions apparently to sustain that view, but which did not; that the remedy suggested, for the reason, among others, that by such proceeding no final settlement of the matter in controversy could be had, was inadequate, and quoted from the White Crow case, *supra,* where the court said:

"A decision either way on such motion would not affect the ultimate rights of the parties, nor be a bar to an action to determine the ownership"—

and, in effect, held that the remedy by motion was merely cumulative. There is nothing in the motion to dismiss on the ground that Jordan and wife are not made parties to this proceeding, for the reason that they did not plead, no relief was sought or decreed affecting their interests herein, and they were made parties only for the purpose of giving them due notice of this suit and permitting him to set up his right, title, or interest in the land or be concluded by the deed from his wife to defendant in error. We can consider no other assignment of error for the reason that plaintiffs in error in their brief have failed to comply with the rules of this court.

Finding no error in the record, the judgment of the trial court is affirmed.

DUNN, C. J., and HAYES and WILLIAMS, JJ., concur; KANE, J., disqualified.